**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 20-cv-01489-CMA-SKC

CORALEE TRAURIG,

    Plaintiff,

v.

OWNERS INSURANCE COMPANY,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT**

---

This matter is before the Court on Defendant Owners Insurance Company's

Motion for Partial Summary Judgment (Doc. # 42), wherein Defendant requests that the

Court enter summary judgment in its favor on Plaintiff Coralee Traurig's claims for

common law bad faith and unreasonable delay or denial of benefits under Colo. Rev.

Stat. §§ 10-3-1115 and -1116. For the following reasons, the Court grants Defendant's

Motion.

## I.    BACKGROUND[1]

On October 1, 2018, Plaintiff was injured in a motor vehicle accident in Colorado

Springs when her vehicle was struck by a vehicle driven by Steven Urban, a non-party

to this case. (Doc. # 42 at 3–4.) Plaintiff asserts that she suffered significant injuries as

---

[1] The following facts are undisputed.

a result of the accident, including, but not limited to, concussion, tinnitus, cervical spine strain, lumbar spine strain, and emotional distress. (Doc. # 43 at 4.)

Mr. Urban had $25,000 in liability insurance coverage through an Allstate insurance policy. (Doc. # 42 at 4.) Plaintiff was the insured under a policy issued by Defendant that provided underinsured motorist ("UIM") benefits in the amount of $100,000 per person and $300,000 per occurrence. (Doc. # 31 at ¶¶ 31–33.)

On January 26, 2019, Defendant requested from Plaintiff information regarding the tortfeasor's liability carrier, Plaintiff's medical records, billing, documentation for any claims beyond medical expenses (including wage loss, future medical expenses, or noneconomic damages), a copy of the police report, a recorded statement, and a medical authorization form. (Doc. # 42 at 4.) Plaintiff signed a release of medical and employment information on February 13, 2019. (Doc. # 43 at 14.) On June 26, 2019, Defendant followed up with Plaintiff and requested a police report number, the tortfeasor's identify and liability limits, updated total medical bills, symptoms and diagnoses, and an estimate of Plaintiff's future prognosis. (Doc. # 42 at 4.) The next day, Defendant sent Plaintiff a medical payment exhaust letter to reflect that $5,000 in medical payments coverage had been paid. (*Id.*) In that letter, Defendant again requested medical information, bills, and an estimate of Plaintiff's prognosis. (*Id.*) Aside from signing the medical authorization form, Plaintiff did not provide any other information to Defendant for nearly a year, until December 2019. (*Id.*)

On November 14, 2019, Plaintiff requested Defendant's written consent to settle her third-party claim with Allstate. (*Id.* at 4–5.) In response, Defendant informed Plaintiff

on November 18, 2019, that the only medical information it had from Plaintiff was "what was paid for her medical payments." (Doc. # 42-2 at 9.) Defendant explained that in order "to evaluate for consent to settle," Defendant needed "the total medicals, bills and notes, for evaluation and review." (*Id.*) On December 2, 2019, Plaintiff sent a copy of the demand package she had sent Allstate to Defendant, which claimed $12,668.04 in past medical bills. (Doc. # 42 at 5.) She also informed Defendant that she was no longer receiving treatment for her injuries. (*Id.*) Defendant granted Plaintiff written permission to settle her third-party claim with Allstate on December 19, 2019, and also extended an offer of $5,000 to settle Plaintiff's UIM claim in exchange for a full and final release. (*Id.*; Doc. # 42-2 at 18.) Plaintiff subsequently accepted the $25,000 policy limit tendered by Allstate. (Doc. # 42 at 5.)

On December 30, 2019, Plaintiff requested that Defendant conduct a UIM evaluation of her claim by January 31, 2020. (*Id.*) Defendant responded on January 7, 2020, stating that it had reviewed the information and noting that there did not appear to be "any new information or medicals." (Doc. # 42-2 at 20.) Defendant asked Plaintiff if she had any wage loss to present and explained that "based on the demand presented and with no further economic damages, Owners Insurance' attached offer of $5,000.00 stands." (Doc. # 42 at 6.) On February 26, 2020, Plaintiff rejected Defendant's settlement offer and submitted a counteroffer of $20,000 to settle her UIM claim. (*Id.* at 6.) Defendant responded on March 19, 2020, stating "[w]e feel our original offer of $5,000 for [Plaintiff's] disputed claim was adequate, but in an effort to settle this disputed claim we will make an offer of $6,000." (*Id.*; Doc. # 43 at 7.) After receiving no

3

response, Defendant followed up with Plaintiff on April 30, 2020, regarding its $6,000 settlement offer. (Doc. # 42 at 6.)

Plaintiff filed suit against Defendant in state court on May 4, 2020. (*Id.*) She asserted three claims for relief: (1) common law bad faith breach of insurance contract; (2) statutory bad faith under Colo. Rev. Stat. §§ 10-3-1115 and -1116; and (3) breach of contract. *See generally* (Doc. # 5.) Defendant removed the case to federal court on May 26, 2020. (Doc. # 1.) On June 2, 2020, Defendant filed a Partial Motion to Dismiss on the basis that Plaintiff's common law and statutory bad faith claims failed to state a claim for which relief can be granted. (Doc. # 10.)

This Court granted Defendant's Partial Motion to Dismiss (Doc. # 10) and dismissed Plaintiff's first and second claims without prejudice pursuant to Fed. R. Civ. P. 12(b)(6) on March 26, 2021. (Doc. # 29.) The Court granted Plaintiff leave to amend, and Plaintiff subsequently filed her Amended Complaint (Doc. # 31) asserting the same three claims on April 23, 2021.

Several matters are now pending before the Court. First, Defendant filed a second Partial Motion to Dismiss (Doc. # 35) on the basis that the Amended Complaint still fails to sufficiently allege claims for common law and statutory bad faith.[2] As alternative relief, Defendant filed the instant Motion for Partial Summary Judgment arguing that Plaintiff's common law and statutory bad faith claims fail as a matter of law

---

[2] The Court referred Defendant's Partial Motion to Dismiss to United States Magistrate Judge S. Kato Crews on May 10, 2021. (Doc. # 39). On February 17, 2022, Judge Crews entered his Recommendation of United States Magistrate Judge, wherein he recommends this Court find "[b]y the slimmest of margins" that Plaintiff now sufficiently alleges her first and second claims. (Doc. # 45 at 5.) Defendant timely filed an Objection to the Recommendation. (Doc. # 46.)

because there is "no evidence that Defendant acted unreasonably." (Doc. # 42 at 2.)
Plaintiff filed a Response (Doc. # 43), and Defendant followed with its Reply (Doc. # 44).
The Court determines that summary judgment is the appropriate vehicle for resolving
these matters.

## II.   <u>LEGAL STANDARDS</u>

Summary judgment is warranted when "the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper
disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*,
259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such
that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v.
Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for
summary judgment, a court must view the evidence in the light most favorable to the
non-moving party. *See id.* However, conclusory statements based merely on conjecture,
speculation, or subjective belief do not constitute summary judgment evidence. *Bones
v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a
genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In
attempting to meet this standard, a movant who does not bear the ultimate burden of
persuasion at trial does not need to disprove the other party's claim; rather, the movant
need simply point out to the Court a lack of evidence for the other party on an essential

element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in his favor. *Jaramillo v. Adams Cnty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

## III.   DISCUSSION

Defendant argues that it is entitled to summary judgment on Plaintiff's common law bad faith claim and statutory claim for unreasonable delay or denial of insurance benefits on the basis that there is no evidence that Defendant acted unreasonably—a necessary element of both claims. The Court agrees with Defendant.

### A.   APPLICABLE LAW

Under Colorado law, both common law and statutory bad faith claims require a showing of unreasonable conduct. *McKinney v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-01651-CMA-KLM, 2021 WL 4472921, at *5 (D. Colo. Sept. 30, 2021). A common law bad faith claim requires the insured to prove both "(1) the insurer acted unreasonably

under the circumstances, and (2) the insurer either knowingly or recklessly disregarded the validity of the insured's claim." *Rabin v. Fid. Nat. Prop. & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1114 (D. Colo. 2012). Meanwhile, "the only element at issue in a statutory claim is whether an insured denied [or delayed] benefits without a reasonable basis." *Fisher v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 57, ¶ 23, 419 P.3d 985, 990 (*Fisher I*) (internal quotations and brackets omitted), *aff'd by State Farm Mut. Auto. Ins. Co. v. Fisher*, 2018 CO 39, ¶ 27, 418 P.3d 501, 506 (*Fisher II*); *see* Colo. Rev. Stat. § 10-3-1115(1)(a) ("A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.").

What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury. *Bankr. Est. of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 524 (Colo. App. 2008). "However, in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 497 (Colo. App. 2011). Whether an insurer's conduct was reasonable is "determined objectively, based on proof of industry standards." *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 415 (Colo. 2004). It is reasonable for an insurer to challenge claims that are "fairly debatable." *Zolman*, 261 P.3d at 496 (citing *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985)). An insurer will be found to have acted in bad faith only if it has intentionally denied, failed to process, or failed to pay a claim without a reasonable basis. *Savio*, 706 P.2d at 1275.

**B.     ANALYSIS**

Defendant argues that summary judgment is appropriate because there is no evidence that Defendant acted unreasonably; rather, Defendant contends that the undisputed facts show that Defendant promptly and reasonably acted to resolve Plaintiff's claim and attempted to negotiate with her in good faith. (Doc. # 42 at 20.) Moreover, Defendant asserts that Plaintiff's $25,000 settlement with Allstate was sufficient to cover her claimed medical expenses of $12,668.04. (*Id.* at 10.) Given that any remaining damages are noneconomic, Defendant argues that the exact value of Plaintiff's claim is "fairly debatable" and it was therefore reasonable for Defendant to extend settlement offers without issuing payment for the disputed claim. (*Id.* at 11.)

Plaintiff first attempts to argue that Defendant acted unreasonably by failing to issue payment for **undisputed** benefits. (Doc. # 43 at 9); *see Fisher II*, ¶ 3, 418 P.3d at 502 (holding that insurers have a duty to pay undisputed portions of a UIM claim, such as medical expenses, "even though other components of an insured's claim may still be reasonably in dispute"). However, the Court sees no evidence of undisputed benefits remaining in this case: Plaintiff does not dispute that her claimed medical expenses were $12,668.04, that she claims no lost wages, and that she received $25,000 from Allstate. *See* (*id.* at 3–4.) Because Plaintiff's settlement with Allstate exceeded her medical bills and any other documented economic damages, the Court finds it to be an undisputed material fact that Plaintiff's remaining damages are solely noneconomic. Therefore, the Court agrees with Defendant that Plaintiff's claim is "fairly debatable" and, as such, Defendant did not act unreasonably by failing to issue payment. *See, e.g.*,

*Nyborg v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-01918-RM-KLM, 2021 WL 662305, at *6 (D. Colo. Feb. 19, 2021) ("[U]nlike economic damages such as those associated with Plaintiffs' medical bills, there is no sum certain to which an insured is entitled for non-economic damages, which is indicative of the fact that there was a 'legitimate dispute' over the value of such damages.").

Plaintiff raises several other arguments that Defendant's conduct was unreasonable "[e]ven assuming *arguendo* that Plaintiff's claims are 'fairly debatable.'" (Doc. # 43 at 9.) First, Plaintiff argues that Defendant unreasonably failed to provide an explanation of its offers and/or denial of Plaintiff's UIM claim. Colorado law defines unfair claims settlement practices to include "[f]ailing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement." Colo. Rev. Stat. § 10-3-1104(1)(h)(XIV); *see also Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 344 (Colo. 2004) (determining that § 10-3-1104 constitutes valid evidence of industry standards). The Court disagrees with Plaintiff that the undisputed facts show that Defendant acted unreasonably by failing "to provide any explanation as to the factual, contractual, or legal basis" for its settlement offer amounts. (Doc. # 43 at 12.) Rather, in its January 7, 2020 response to Plaintiff, Defendant noted that there did not appear to be new information or medical bills presented, so "[b]ased on the demand presented and with no further economic damages, Owners Insurance' attached offer of $5,000.00 stands." (Doc. # 42-2 at 20.) Moreover, Defendant sought clarification as to whether Plaintiff had any wage loss to present. (*Id.*) Under these circumstances, the Court concludes that

Defendant's explanation was not unreasonable, particularly given Defendant's request

for additional information and the implicit acknowledgement that the settlement offer

was not necessarily final. *See Irey v. State Farm Mut. Auto. Ins. Co.*, No. 1:20-cv-

01324-RBJ, 2020 WL 3577736, at *2 (D. Colo. July 1, 2020) (dismissing bad faith claim

where an insurer's explanation of a settlement offer was "minimal," but the insurer was

offering a settlement above the covered medical bills and the settlement letter

"solicit[ed] additional information about any medical expenses" and "request[ed]

clarification of any claim for [the insured's] lost earnings").

Next, the Court rejects Plaintiff's argument that Defendant acted unreasonably

when it "delayed in providing consent to settle Plaintiff's third-party claim for over a

month." (Doc. # 43 at 15.) In so arguing, Plaintiff asks the Court to credit a

mischaracterization of the timeline where Defendant allegedly delayed Plaintiff's request

to settle with Allstate for several weeks with no reasonable basis. Certainly, the

undisputed facts show that Plaintiff requested Defendant's consent to settle on

November 14, 2019, and Defendant granted consent on December 19, 2019. (Doc. # 42

at 4–5.) However, Defendant responded to Plaintiff's request for consent **four days**

**later**, on November 18, 2019, informing Plaintiff that it needed the total medical

information, bills, and notes in order to evaluate the consent to settle. (*Id.* at 5.) Plaintiff

did not submit that information to Defendant until December 2, 2019. (*Id.*) After

Defendant received the demand package from Plaintiff for evaluation, Defendant

granted Plaintiff permission to settle on December 19, 2019. (*Id.*) The Court concludes

that no reasonable juror could find that Defendant acted unreasonably under these

circumstances. *See, e.g.*, *Vinnedge v. Owners Ins. Co.*, 542 F. Supp. 3d 1145, 1151 (D. Colo. 2021) ("Unreasonable delay typically involves an insurance company sitting on a claim for months or even years. [Defendant] could not have unreasonably delayed consideration of her claim when plaintiff gave it only two weeks to evaluate it.").

Plaintiff also appears to argue that Defendant acted unreasonably by entirely failing to consider her noneconomic damages, including her alleged physical and mental pain and suffering, inconvenience, and physical impairment. (Doc. # 43 at 13–14.) The Court sees no factual support for this argument, and Plaintiff provides none.[3] Indeed, it is unclear to the Court how Defendant could have entirely ignored Plaintiff's noneconomic damages while simultaneously offering Plaintiff settlement amounts in excess of Plaintiff's documented economic damages and third-party settlement. *See* (Doc. # 42 at 6.)

The Court finds that Plaintiff has failed to set forth any facts, let alone specific facts from which a rational trier of fact could find in her favor, suggesting that Defendant acted unreasonably under the circumstances. *Adler*, 144 F.3d at 671. Accordingly, the Court decides as a matter of law that Defendant did not act unreasonably. Defendant is entitled to summary judgment on both Plaintiff's common law bad faith claim and statutory claim for unreasonable delay or denial of benefits.

---

[3] Plaintiff argues that Defendant failed to consider "her traumatic brain injury and cognitive deficits." (Doc. # 43 at 13–14.) In support, Plaintiff repeatedly cites to a medical report completed by clinical psychologist Dennis A. Helffenstein, Ph.D., C.R.C., on March 1, 2021. (Doc. # 43-1 at 20). Because this report was completed ten months after Plaintiff initiated this lawsuit, it is impossible for Defendant to have acted unreasonably by failing to consider it in evaluating Plaintiff's UIM claim from December 2019 to May 2020. The Court finds the report irrelevant to the instant Motion and rejects Plaintiff's disingenuous attempts to imply that this information was available to Defendant prior to the start of this litigation.

IV.    <u>**CONCLUSION**</u>

For the foregoing reasons, it is ORDERED as follows:

- Defendant's Motion for Partial Summary Judgment (Doc. # 42) is GRANTED;

- summary judgment shall enter in favor of Defendant and against Plaintiff on Plaintiff's first and second claims for relief;

- accordingly, Defendant's Partial Motion to Dismiss for Failure to State a Claim (Doc. # 35) is DENIED AS MOOT; and

- the February 17, 2022 Recommendation of United States Magistrate Judge (Doc. # 45) is MOOT.

The parties are DIRECTED to contact Magistrate Judge Crews within five days of this Order to reset the Final Pretrial Conference.

DATED:  March 22, 2022

BY THE COURT:

_____

CHRISTINE M. ARGUELLO
United States District Judge